IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TWIN VALLEY COFFEE LLC<br>2941 Main Street<br>Morgantown, PA 19543<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION<br>409 Third Street SW,<br>Washington, DC 20416<br><br>Serve: U.S. Small Business Administration<br>409 Third Street SW<br>Washington, DC 20416<br><br>Kelly Loeffler<br>Administrator<br>U.S. Small Business Administration<br>Office of the Administrator<br>409 Third Street SW<br>Washington, DC 20416<br><br>Todd Blanche<br>United States Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br><br>Jeanine Ferris Pirro<br>United States Attorney for the District of Columbia<br>U.S. Attorneys' Office<br>601 D Street NW<br>Washington, DC 20001<br><br>and | Case No. 1:26-cv-03736 |

KELLY LOEFFLER
in her official capacity as
Administrator of the United States
Small Business Administration
409 Third Street SW,
Washington, DC 20416

Serve: U.S. Small Business Administration
409 Third Street SW
Washington, DC 20416

Kelly Loeffler
Administrator
U.S. Small Business Administration
Office of the Administrator
409 Third Street SW
Washington, DC 20416

Todd Blanche
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530

Jeanine Ferris Pirro
United States Attorney for the
District of Columbia
U.S. Attorneys' Office
601 D Street NW
Washington, DC 20001

Defendants

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Twin Valley Coffee LLC ("TVC" or "Plaintiff"), in the above-entitled action, by and through its undersigned counsel, hereby demands judgment against Defendants, United States Small Business Administration ("SBA") and SBA Administrator Kelly Loeffler ("Administrator Loeffler"), in her official capacity as Administrator of the United States Small Business Administration (collectively, "Defendants"), for declaratory and injunctive relief as set forth

below, and as its Complaint states as follows:

## NATURE OF THE CASE

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking reversal of Defendants' far-too-late, arbitrary, and capricious decision to retroactively deem Plaintiff ineligible for the amount of emergency federal financial grant assistance properly awarded by the same agency more than five years ago and demand repayment of the entire $532,399.37 in rightfully-awarded grant funds.

2. The American Rescue Plan Act of 2021, Pub. L. No. 117–2 § 5003, 135 Stat. 4, 85 (2021) (codified at 15 U.S.C. § 9009c), established the Restaurant Revitalization Fund ("RRF") Program to provide emergency financial assistance to eligible food and beverage service businesses adversely impacted by the global COVID-19 pandemic. The RRF Program is administered by SBA and Administrator Loeffler.

3. The RRF Program was not limited solely to restaurants. In fact, 15 U.S.C. § 9009c (the "RRF Statute") established fourteen categories of businesses that Congress deemed automatically eligible for RRF grants as food and beverage service businesses, including restaurants, food stands, food trucks, food carts, and other places of business where the public or patrons assemble for the primary purpose of beings served food and drink. 15 U.S.C. § 9009c(a)(4)(A).

4. In 2021, SBA announced a partnership with various point-of-sale ("POS") partners such as Square, Inc. ("Square") and others. Under this partnership, SBA and its POS partners developed a specialized application for the RRF Program that could be filled out from within the POS system. SBA and its POS partners touted this as the preferred application method because the

POS application would automatically input relevant data directly from the POS system, allowing eligible entities to apply without the need to consult their financial statements, tax documents, or other data sources.

5. TVC is a premium coffee company that roasts its own specialty grade coffee beans and operates several coffee shops in eastern Pennsylvania. TVC applied for the RRF Program through its Square POS system's application, and it received an RRF award from SBA in May 2021 after SBA determined that its application demonstrated eligibility under the RRF Statute. As part of its review, SBA compared submitted financial data with data from the Internal Revenue Service ("IRS") and POS partners as well as other sources to confirm that the amount of funding awarded was correct. Following receipt of its grant, TVC complied with all statutory and regulatory obligations, spent its funds on eligible expenditures, and submitted its final report in February 2022. In early 2024, TVC responded to SBA's requests for various documentary records. Thereafter, TVC heard nothing from SBA and rightfully assumed it had fulfilled all grant obligations.

6. On February 19, 2025, the United States Senate confirmed Administrator Loeffler to serve as Administrator of SBA.

7. On February 20, 2025, Administrator Loeffler assumed office and promised to "restore the agency to its founding mission of growing small business, fueling free enterprise, and driving economic resilience."

8. Approximately a year later, Administrator Loeffler and SBA began issuing demand letters to RRF recipients claiming, for the first time in five years and contrary to SBA's own prior decision making, that they were ineligible for their RRF awards and that they must repay the entire award within 30 days.

9. On January 6, 2026, nearly five years after awarding TVC an RRF grant, almost four years after it received TVC's final financial report, and two years after it had last contacted TVC, SBA issued such a demand letter (the "Demand Letter") to TVC stating that it had redetermined TVC's eligibility for its RRF award amount, deeming on a *post hoc* basis that TVC's grant amount was incorrect and demanding TVC repay the entirety of its $532,399.37 grant within 30 days.

10. TVC submitted a Request for Reconsideration *pro se* on February 4, 2026. One day later, SBA stated it "cannot consider [TVC's] request for reconsideration," failing to meaningfully engage in many of TVC's arguments and objections.

11. On or around June 2, 2026, SBA issued a Delinquency Notice that was not received by TVC until late June 2026. On July 17, 2026, TVC retained counsel, and on August 1, 2026, TVC filed a timely appeal to the SBS Treasury Division ("Treasury Appeal").

12. On August 4, 2026, SBA's Treasury Division resolved the Treasury Appeal by sending a conclusory e-mail (the "Treasury Appeal Decision"), stating that "[t]his award was selected for an audit, and during review was found to be ineligible." Exhibit A – E-mail from RRF_Change_of_Portal_User_Requests@sba.gov to Scott Stemetzki, Aug. 4, 2026. It further stated that "[t]here are no documents that can change this decision," but "the Agency has opted to allow a one-time request for reconsideration when Awardees believe they have additional information that might change our decision." *Id.* The Treasury Appeal Decision did not address any of the arguments raised in TVC's Treasury Appeal and simply rubber-stamped SBA's prior conclusory rescission, as set forth in the Demand Letter.

13. Subsequently, on September 8, 2026, TVC submitted a Supplemental Request for Reconsideration to the RRF Program Office. On September 25, 2026 SBA's RRF program office

similarly declined to reconsider its decision, again rubber stamping its previous denial and concluding "SBA cannot reverse its original decision." Exhibit B – E-mail from RRFAwardRecoveryReconsiderations@sba.gov to Scott W. Stemetzki, Sept. 25, 2026.

14. SBA's decision to reconsider its initial eligibility determination on the amount of TVC's RRF grant after unreasonable delay, conclusory basis for doing so, and failure to provide TVC with due process violates the APA, as such final agency action is arbitrary and capricious, contrary to law, an abuse of discretion, and not supported by substantial evidence. Urgent relief is necessary here to prevent the devastating financial impact of having to repay $532,399.37 due to SBA's arbitrary and capricious *post hoc* redetermination of TVC's RRF Program grant award amount.

**PARTIES, JURISDICTION, AND VENUE**

15. Plaintiff, Twin Valley Coffee LLC, is a Pennsylvania for-profit corporation, organized and operated under the laws of the Commonwealth of Pennsylvania, and has a principal place of business at 2941 Main Street, Morgantown, PA 19543. For subject-matter jurisdiction purposes, TVC is a citizen of Pennsylvania, its state of incorporation and the state in which its principal place of business is located.

16. Defendant, United States Small Business Administration, is an independent agency of the United States Government, organized and operated under the laws and regulations of the United States of America in effect from time to time, and has a primary office at 409 Third Street S.W., Washington, D.C. 20416. SBA is responsible for the lawful administration of the RRF Program pursuant to the American Rescue Plan Act of 2021, as codified at 15 U.S.C. § 9009c. SBA administers the RRF Program. SBA's mission is to help Americans start, build, and grow small businesses.

17. Defendant, Kelly Loeffler, is the Administrator of SBA and oversees its operations. Administrator Loeffler is sued in her official capacity.

18. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents questions arising under the laws of the United States, specifically the APA, 5 U.S.C. § 706, and the Declaratory Judgment Act, 27 U.S.C. §§ 2201 and 2202.

19. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e)(1) because Defendants, SBA and Administrator Loeffler, are an agency and officer (acting in an official capacity) of the United States, respectively; Defendants are located in this district; and a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically, the RRF Program is administered primarily in this district at SBA Headquarters.

20. The Court has authority to issue declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

## FACTS COMMON TO ALL COUNTS

### A. Restaurant Revitalization Fund

21. The American Rescue Plan Act of 2021 (the "Act"), signed into law on March 11, 2021, included $28.6 billion for grants to food and beverage service businesses detrimentally impacted by the COVID-19 pandemic. Pub. L. No. 117–2 § 5003, 185 Stat. 4, 85 (2021). By SBA's own admission, the RRF grant program was designed with the intention of helping "small businesses in the food service industry adversely affected by the . . . COVID-19 . . . pandemic." U.S. SMALL BUS. ADMIN., *SBA's Restaurant Revitalization Fund Program Award Practices*, Mar. 26, 2024, at 3, 7, available at https://legacy.sba.gov/document/report-24-09-sbas-restaurant-revitalization-fund-program-award-practices (navigate to "Download.pdf") (last visited Oct. 23, 2026).

22. RRF awards were used for "expenses incurred as a direct result of, or during, the COVID-19 pandemic" including payroll, mortgage payments, rent payments, utilities, maintenance, supplies, food and beverage expenses in the scope of normal business practice, covered supplier costs, operational expenses, paid sick leave, and "other expenses that the Administrator determines to be essential[.]" 15 U.S.C. § 9009c(c)(5). Congress required that funds be spent during the "covered period," encompassing the period of February 15, 2020 through March 11, 2023. *Id.* § 9009c(a)(3).

23. Eligible entities were entitled to receive grants "equal to the pandemic-related loss of the eligible entity," but in no event could grants exceed $5,000,000.00 per physical location and $10,000,000.00 in the aggregate. *Id.* §§ 9009c(c)(4)(A)–(B)(i).

24. For entities in operation prior to 2019, "[p]andemic-related loss" was defined as "the gross receipts . . . of the eligible entity during 2020 subtracted from the gross receipts of the eligible entity in 2019, if such sum is greater than zero[.]" *Id.* § 9009c(a)(7)(A).

25. For entities that began operations in 2019, "[p]andemic-related loss" was defined as "the difference between . . . the product obtained by multiplying the average monthly gross receipts of the eligible entity in 2019 by 12 and . . . the product obtained by multiplying the average monthly gross receipts of the eligible entity in 2020 by 12; or . . . an amount based on a formula determined by the Administrator[.]" *Id.* § 9009c(a)(7)(B).

26. Where an eligible entity operated multiple locations with different operating dates, the eligibility amount was to be determined by calculating the difference per location in compliance with the proscribed method based on the date the location began operations and adding those values together to obtain the total "[p]andemic-related loss."

27. The RRF Statute defined "eligible entity" as "a restaurant, food stand, food truck,

food cart, caterer, saloon, inn, tavern, bar, lounge, brewpub, tasting room, taproom, licensed facility or premise of a beverage alcohol producer where the public may taste, sample, or purchase products, or other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink[.]" *Id.* § 9009c(a)(4)(A). Entities that were State or local government-operated, operated or owned more than 20 locations, had a pending Shuttered Venue Operators Grant application, or were publicly traded companies were deemed ineligible. *Id.* § 9009c(a)(4)(C). The RRF Statute did not apply any other relevant criteria, requirements, or qualifications to be deemed eligible entities. *See generally id.* § 9009c.

28. Congress did not limit or otherwise prevent an eligible entity from maintaining multiple business activities as part of its business.

29. Congress drafted the RRF Statute to ensure businesses would not need to undergo burdensome administrative or bureaucratic registration or identification procedures, stating, "the Administrator shall prioritize the ability of each applicant to use their existing business identifiers over requiring other forms of registration or identification that may not be common to their industry and imposing additional burdens on applicants." *Id.* § 9009c(c)(2)(B).

30. To prevent "imposing additional burdens on applicants," *see id.*, SBA partnered with various POS partners to develop a form of application that could be utilized by eligible entities directly through their POS systems. In an April 21, 2021 press release, SBA represented that applicants could "access the RRF application or data they need to fill out the application through their trusted point-of-sale (POS) service providers." U.S. SMALL BUS. ADMIN., *SBA Announces First-of-Its-Kind Technology Initiative for Restaurant Revitalization Fund*, Apr. 22, 2021, available at https://legacy.sba.gov/article/2021/apr/22/sba-announces-first-its-kind-technology-initiative-restaurant-revitalization-fund (last visited Oct. 23, 2026) The press release further stated

that applicants "will be able to work directly with their point-of-sale service providers to help them apply for the RRF. Each point-of-sale partner is helping in different ways—from providing a fully integrated application experience, to building pre-packaged point-of-sale documentation . . . . **SBA encourages applicants to use the POS ecosystem** . . . ." *Id.* (emphasis added). SBA further advertised that "[i]f you are working with Square or Toast, you do not need to register beforehand on the application portal." U.S. SMALL BUS. ADMIN., *Restaurant Revitalization Fund*, Feb. 4, 2026, available at https://legacy.sba.gov/funding-programs/loans/covid-19-relief-options/restaurant-revitalization-fund (last visited Oct. 23, 2026).

31. Square itself touted the benefits of applying through its system, stating "[r]estaurants and other eligible food and beverage sellers can apply for a RRF award directly from Square's dashboard if they used Square to process customer payments in both 2019 and 2020." Square, Inc., *Square Announces Participation in the Small Business Administration's Restaurant Revitalization Fund Distribution Efforts* (Apr. 22, 2021), available at https://squareup.com/us/en/press/square-rrf (last visited Oct. 23, 2026). Then-SBA Administrator Isabella Casillas Guzman stated: "The SBA is partnering with point of sale providers to leverage technology to better reach the smallest businesses that need our help the most." *Id.* Touting the benefits, she continued, "[t]his partnership enables us to meet small businesses where they are, instead of waiting for them to come to us." *Id.*

32. Consistent with these announcements, Square's POS system would automatically input the necessary data and, where necessary, perform necessary calculations and extrapolations as required by the RRF Statute's definition of "[p]andemic-related loss" to complete an eligible entity's application.

33. On information and belief, SBA reviewed RRF applications submitted through

Square to ensure compliance with the RRF Statute and its own internal guidance before awarding RRF grants.

34. Although the RRF statute did not specifically instruct SBA to do so, SBA developed a Program Guide concurrent with the RRF Application. U.S. SMALL BUS. ADMIN., *Restaurant Revitalization Funding Program, Program Guide as of April 28, 2021* (hereinafter "*Program Guide*"), Apr. 28, 2021, available at https://legacy.sba.gov/sites/default/files/2021-04/Restaurant%20Revitalization%20Fund%20Program%20Guide%20as%20of%204.28.21-508_0.pdf (last visited Oct. 23, 2026). That Program Guide provided explanations of various Application questions and, where the RRF Statute delegated authority, determinations by the Administrator authorized by Congress. *See, e.g.*, 15 U.S.C. § 9009c(a)(7)(B)(ii) ("[A]n amount based on a formula determined by the Administrator[.]").

35. The Program Guide explained that, for applicants who were in operation prior to or on January 1, 2019, those entities were required to begin with "gross receipts as reported on the eligible entity's 2019 Federal tax return" defined as line 1c. Program Guide at 7, 19. Then, entities were to "[s]ubtract 2020 gross receipts as reported to be reported on the eligible entity's 2020 Federal tax return or, **<u>if applying through a designated SBA point-of-sale restaurant partner, the gross receipts that are recorded with the point-of-sale partner</u>**." *Id.* at 7 (emphasis added).

36. SBA's Program Guide provided a different formula for locations that began operations in 2019. For those locations, SBA instructed that entities should "[b]egin with gross receipts as reported on the eligible entity's 2019 Federal tax return" and "[c]alculate your 2019 average monthly gross receipts." *Id.* at 8. Then, the entity must "[m]ultiply your 2019 average monthly gross receipts by 12." *Id.* Finally, the entity needed to then "[s]ubtract 2020 gross receipts as reported or to be reported on the eligible entity's 2020 Federal tax return or, **<u>if applying through</u>**

**a designated SBA point-of-sale restaurant partner, the gross receipts that are recorded with the point-of-sale partner**." *Id.* (emphasis added).

37. For those eligible entities with multiple locations that require the use of different calculations, SBA instructed that "[a]pplicants that operate multiple locations may calculate funding amounts for their locations using separate Calculation methods and aggregate the amounts together." *Id.* at 9. The Program Guide and RRF Application called this calculation Table 4.

38. SBA and its POS partners developed appropriate applications for each participating POS platform to comply with the RRF Statute and SBA's guidance.

39. An eligible entity applying through a POS partner's application would not need to perform by hand the calculation prescribed by the RRF Statute and expanded upon in SBA's Program Guide. Instead, the POS partner's application would automatically enter relevant data, including the applicant's 2019 and 2020 revenue data, perform the relevant calculations, consistent with the program's design and SBAs oversight and instruction.

40. All calculations were performed by the POS system in the background, meaning an applicant was not required to enter in its 2019 revenue, 2020 revenue, or other data kept by the POS system.

41. The RRF Statute provided only limited circumstances where a grant, or a portion thereof, could be recouped: first, "[a]ny amount of a grant made under this subsection to an eligible entity based on estimated receipts that is greater than the actual gross receipts of the eligible entity in 2020 shall be returned to the Treasury[,]" *id.* § 9009c(c)(4)(B)(ii); and second, "[i]f an eligible entity that receives a grant under this subsection fails to use all grant funds or permanently ceases operations on or before the last day of the covered period, the eligible entity shall return to the Treasury any funds that the eligible entity did not use for the allowable expenses[,]" *id.*

§ 9009c(c)(6). No other bases for recoupment were authorized by the RRF Statute.

42. Moreover, the RRF Statute does not authorize SBA to reconsider an entity's eligibility for an RRF grant it received or the amount of a grant awarded. Indeed, the Program Guide specifically explained that SBA would not permit adjustments or corrections to awards after they were paid to grantees. Program Guide at 7.

**B. SBA's Eligibility Review Process**

43. Businesses submitted applications for RRF grants through an online portal. Upon receipt of an application, SBA processed the same "with the intention of confirming the applicant's eligibility and ensuring that the requested amount of RRF funding was accurate." *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 105 (D.D.C. 2022).

44. SBA analyzed each application pursuant to a two-step process. First, it verified each applicant's revenue information with data from the Internal Revenue Service, other available government data, and data from participating point-of-sale vendors that process and track businesses' sales. For applicants utilizing POS systems such as Square, SBA would verify the submitted data with the POS system to ensure accuracy thereof. Second, SBA reviewed each application for eligibility and discrepancies. SBA did not pay out RRF grants until it fully confirmed the applicant's eligibility.

**C. TVC's RRF Application, SBA's Approval, and TVC's Grant Use**

45. TVC is a premium coffee company that roasts its own specialty-grade coffee beans and operates several coffee shops in eastern Pennsylvania. In 2011, it opened its first coffee shop in Elverson, established at the Gazebo, a 12-foot-wide structure that quickly became a gathering place for the community. In 2019, the Gazebo made $770,815.29 in gross receipts.

46. After finding success at the Gazebo, TVC opened its Shady Maple location on

December 11, 2019, which made $27,311.22 in gross receipts during its partial month of 2019 sales.

47. On March 12, 2021, TVC opened its Eagleview location, spending $22,105.10 in RRF Eligible Expenses preparing to open that location.

48. In addition to operating successful cafés, TVC sold its specialty beans wholesale to retailers such as Whole Foods and other coffee shops and cafés. That portion of its business earned gross receipts of $266,406.49 in 2019 and $264,656.82 in 2020.

49. Once COVID-19 hit, ensuing regulations and societal changes severely disrupted TVC's business. TVC was forced to close the Gazebo, meaning it made only $163,640.92 in revenue during 2020. The Shady Maple location was able to serve customers from a walk-up window, and its 2020 revenue was $916,432.82.

50. In early 2021, Square sent a message to TVC regarding the RRF Program, spiking TVC's interest in the program. Shortly before the RRF Program started accepting applications, SBA announced its work with POS partners such as Square. When TVC received a message from Square stating that it was eligible and that Square would provide a method via its platform to complete the RRF application, TVC decided to apply.

51. On May 6, 2021, TVC submitted an RRF grant application through Square's internal application. It truthfully and transparently described TVC's business, and Square auto-populated the majority of TVC's business information based on revenue information already saved within Square's POS system.

52. Based on TVC's truthful answers and the information saved and processed by Square's system, Square guided TVC to apply for one location and calculated TVC's award based on a Table 1 calculation, using only revenue pertaining to the single location, the Gazebo. TVC

was unaware of different Table calculations available for differently situated entities, such as Table 4 that includes calculation methods for locations starting operations within the year 2019. Square did not disclose its calculation methods. TVC reviewed the automatically populated information and trusted Square had provided accurate information because it trusted, as SBA repeatedly advised applicants to do, Square was appropriately using the data for only one location and relied on Square's methodology.

53. SBA examined and evaluated TVC's RRF application pursuant to its two-step process and found TVC eligible for an RRF award in the amount it calculated.

54. On May 11, 2021, SBA approved TVC for a grant in the amount of $532,399.37. That decision was a product of SBA's due diligence and two-step verification process that included a review by SBA representatives trained in the program requirements to ensure applicants qualified as eligible entities. And, as stated above, that verification process included a review of TVC's data as obtained directly from Square and IRS filings.

55. TVC expended all of its grant funds on eligible and allowable expenses under the RRF Statute.

56. On February 7, 2022, TVC submitted a final Post-Award Report detailing and certifying that it used the RRF grant on permissible expenses, which included payroll.

57. This report was TVC's final financial report and represented its closeout documentation for the grant.

58. From that moment, SBA was required to "make every effort to complete all closeout actions" within one year, *i.e.*, by February 7, 2023. 2 C.F.R. § 200.344(b). SBA did not meet that deadline.

**D. SBA's Demand Letter, Delinquency Notice, and Recoupment Efforts**

59. On January 6, 2026, SBA issued a Demand Letter explaining that it had reconsidered SBA's eligibility decision from 2021 and had now retroactively decided that TVC was not eligible for the amount of RRF funds it received, and, as a result, TVC must return all the RRF funds it received.

60. The Demand Letter incorrectly took the position that TVC must return its RRF funds on the following grounds:

> The award calculation was calculated using the gross receipts reported in the Restaurant Revitalization application, which did not match the gross receipts reported on the 2019/2020 tax return. The 2019 revenue was reported as $770,815.29 and the 2020 revenue reported as $163,640.92. The 2019 tax returns show revenue of $1,099,260.00 and the 2020 tax returns show revenue of $1,442,664.00. This adjustment in the calculation resulted in a negative award amount and the funds must be returned.

61. The Demand Letter constitutes final agency action for purposes of the APA.

62. On February 4, 2026, TVC submitted its Request for Reconsideration without the aid of counsel. In an unsigned email on February 5, SBA stated it "cannot consider [TVC's] request for reconsideration."

63. Without having meaningfully engaged with TVC's objections to agency action, on June 2, 2026, SBA issued a delinquency notice, which TVC received in late June 2026.

64. The Delinquency Notice states that:

> This is official notice that the U.S. Small Business Administration ("SBA") intends to refer your debt (as described in the attached bill) to the U.S. Department of the Treasury ("Treasury") as you are considered a delinquent borrower or guarantor on a loan made by SBA or made by a lender (such as bank, credit union, certified development company, or intermediary) and guaranteed or assumed by SBA. By law, federal agencies such as SBA are required to refer delinquent debtors to Treasury for offset of federal or state payments and other collection actions, such as administrative wage garnishment.
>
> The debt is seriously delinquent. If you do not pay your delinquent debt or agree to a repayment plan or provide supporting documentation acceptable to SBA showing that you are not liable for the debt **WITHIN 60 CALENDAR DAYS FROM THE**

> **DATE OF THIS NOTICE**, or take other action as described below, SBA may refer your debt to Treasury, and Treasury may add interest, substantial collection fees (26% or more), and penalties (if applicable) to your unpaid debt as provided by law. **The amount indicated on the attached bill is due in full, plus (as applicable) interest, fees, penalties, and expenses accrued after this date.** If it is determined funds are collected more than the debt you owe, they will be returned to you, unless prohibited by law.

The Delinquency Notice further states: "**THIS IS THE ONLY NOTICE YOU WILL RECEIVE BEFORE YOUR DELINQUENT DEBT IS SENT TO TREASURY.** Once referred to the Department of Treasury, SBA will no longer service this debt."

65. The Delinquency Notice stated that TVC could submit evidence to SBA's Treasury Division within 60 calendar days of the notice "if [TVC] believe[s] that all or part of your debt is not delinquent or cannot legally be collected . . . ."

66. On July 17, 2026, TVC retained counsel to challenge SBA's improper and arbitrary and capricious agency action.

67. On August 1, 2026, TVC submitted its Treasury Appeal to SBA's Treasury Division. In addition to arguing and providing evidence to show that TVC was eligible for its RRF award amount, that Treasury Appeal argued that (a) SBA has denied TVC due process; (b) SBA's reasons for recoupment are arbitrary and capricious because they fail to consider important aspects of TVC's business and the surrounding circumstances; (c) SBA's demand is untimely and follows unreasonable delay; (d) SBA's recoupment efforts violate the manifest injustice, estoppel, and detrimental reliance doctrines; and (e) SBA's Demand Letter miscalculated the amount of funds to which TVC was entitled.

68. In fact, SBA's calculations in the Demand Letter were wrong on several fronts. First, SBA's Demand Letter utilized only the calculation proscribed by Table 1, and even then, it did so incorrectly. Table 1 applies only to eligible entities where all locations had been in operation

prior to January 1, 2019. *See* 15 U.S.C. § 9009c(a)(7)(A). SBA's Program Guide require entities "applying through a designated SBA point-of-sale restaurant partner" to use "the gross receipts that are recorded with the point-of-sale partner." Program Guide at 7. SBA's Demand Letter incorrectly states that such entities must report data from Federal tax returns.

69. Second, SBA's Demand Letter neglected to consider that TVC's Shady Maple location was required to use Table 2 because it opened in mid-December 2019.

70. On August 4, 2026, SBA responded to the Treasury Appeal as follows:

> Hello,
>
> This award was selected for an audit, and during review, was found to be ineligible.
>
> The award calculation was calculated using the gross receipts reported in the Restaurant Revitalization application, which did not match the gross receipts reported on the 2019/2020 tax return. The 2019 revenue was reported as $770,815.29 and the 2020 revenue reported as $163,640.92. The 2019 tax returns show revenue of $1,099,260 and the 2020 tax returns show revenue of $1,442,664. This adjustment in the calculation resulted in a negative award amount and the funds must be returned.
>
> There are no documents that can change this decision. However, the Agency has opted to allow a one-time request for reconsideration when Awardees believe they have additional information that may change our decision. This can be requested at RRFAwardRecoveryReconsiderations@sba.gov.
>
> Thank you.

Exhibit A.

71. The Treasury Appeal Decision was sent from the e-mail address related to the RRF program, *not* the SBA's Treasury Division. In other words, SBA referred the decision on the Treasury Appeal back to the RRF program office—the very group of people who first made the incorrect decision to rescind TVC's grant and had used improper methods to try to recalculate TVC's award.

72. The Treasury Appeal Decision does not meaningfully address any of TVC's

arguments raised in the Treasury Appeal and imposes unstated criteria not set forth in the Delinquency Notice.

73. The Treasury Appeal Decision constitutes final agency action.

74. Subsequently, on September 8, 2026 TVC submitted a Supplemental Request for Reconsideration. TVC's Supplemental Request for Reconsideration contained the same arguments as made in its Treasury Appeal.

75. SBA responded on September 25, 2026 with yet another rote denial. SBA's response stated:

> We are in receipt of your reconsideration request. After review we find no new evidence to reconsider that would change the outcome of our decision. The SBA cannot reverse its original decision.

Exhibit B.

76. As with the first Request for Reconsideration and Treasury Appeal, SBA responded without meaningfully engaging with any of TVC's arguments, evidence, citations, or analysis.

77. Despite the RRF Statute permitting recoupment of funds only in specific situations, SBA appears to be imposing a recoupment request on the basis of a non-enumerated, extra-statutory situation: SBA's own unilateral reconsideration of TVC's application and eligibility amount.

78. Additionally, SBA now takes issue with the very process it partnered with POS partners to develop, claiming now for the first time that the calculations performed through the POS partners' applications are incorrect.

79. SBA's claim that the calculation is incorrect comes despite SBA's joint development of the POS application with its POS partners.

80. No statute or regulation requires TVC to have undertaken agency review, but it did

so in reliance on SBA's instructions, only to face a rubber-stamp decision that did not address TVC's objections to agency action.

81. TVC has exhausted all available administrative remedies.

## CAUSES OF ACTION

82. The courts recognize a strong presumption in favor of judicial review of administrative action.

83. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

84. The APA provides that "final agency action for which there is no other adequate remedy in court" is "subject to judicial review." 5 U.S.C. § 704.

85. The APA provides that courts will "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "unsupported by substantial evidence[.]" 5 U.S.C. §§ 706(2)(A), (B), (C), (E).

86. SBA is an "agency" whose final actions are reviewable under the APA.

## COUNT I – APA: ARBITRARY AND CAPRICIOUS AGENCY ACTION

87. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 86 hereof as if fully set forth and restated herein.

88. Final agency action is arbitrary and capricious if the agency relied on factors which Congress or the Government has not intended it to consider, entirely failed to consider important aspects of a problem, offered an explanation for its decision that runs counter to evidence before

the agency, or is so implausible that it could not be ascribed to difference in view or product of agency expertise.

89. The final agency action in this case is arbitrary and capricious because, *inter alia*:

a. TVC's RRF award was a grant, not a loan, grants are not subject to repayment except in specific circumstances set by the grant documents, and the grant documents related to TVC's grant do not require repayment or permit recoupment under the circumstances of this matter, including but not limited to SBA's decision to reconsider its prior eligibility determination and SBA's decision to reconsider award amounts;

b. SBA's attempt to recoup TVC's RRF award denied TVC due process by failing to provide TVC with adequate notice and a hearing in a meaningful time and manner and by rubber-stamping its prior incorrect recoupment decision without meaningfully considering TVC's objections to agency action;

c. SBA's effort to review eligibility determinations and recoup RRF awards exceeds the scope of SBA's Congressionally-delegated authority, specifically Congress did not provide SBA with the authority to reconsider eligibility determinations or recoup grants after the fact except in limited circumstances established by the RRF Statute and not applicable here;

d. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior eligibility determination on TVC's RRF award, are untimely and come after the expiration of the record retention period for the grant, contrary to federal regulations, 2 C.F.R. §§ 200.334, .345(a)(1);

e. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior eligibility determination on TVC's RRF award, are unreasonably delayed, issued almost five years after SBA made the original decision that TVC was eligible for its RRF award and outside the limited reasonable amount of time within which SBA could reconsider its decisions (*i.e.*, weeks, not years);

f. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior eligibility determination on TVC's RRF award, were issued more than three years after the one-year timeframe following the submission of TVC's final financial report in which SBA was required to make every effort to closeout the grant;

g. SBA's recoupment efforts violate the manifest injustice, estoppel, and detrimental reliance doctrines and fail to consider TVC's reliance interests, because TVC relied on SBA's representations and original decision making in approving TVC's RRF application and award amount by spending the grant funds in accordance with the RRF Statute, only to have SBA seek to recoup those funds years later;

h. SBA's Demand Letter, Delinquency Notice, and other explanations for recoupment are entirely conclusory, fail to articulate a satisfactory explanation for agency action, fail to consider all relevant factors, fail to provide a rational connection between the facts found and the choices made, and fail to explain, in detail, the basis for its changed policy or decision making with regard to TVC's grant;

i. SBA's reversal runs contrary to its initial guidance and public statements regarding its development of the RRF application alongside its POS partners;

j. SBA's reversal suggests it now takes issue with the application and methods it devised years ago alongside its POS partners;

k. SBA offers no explanation for this change in opinion;

l. It ignores clear and convincing undisputed evidence presented to the agency by TVC, including evidence that food and beverage service form the substantial part of TVC's business, and clear and convincing undisputed evidence that it utilized Square's application to calculate its grant amount;

m. The explanation for its redetermination of TVC's amount eligibility entirely fails to consider SBA's prior guidance, SBA's development of an application with POS partners, and SBA's own approval of such application; and

n. Otherwise was arbitrary and capricious based on the evidence in the Administrative Record, a copy of which has not been provided to TVC.

90. For each of these reasons, SBA's redetermination of TVC's RRF Program award amount eligibility to deem it ineligible for the amount received is arbitrary and capricious and must be set aside.

**<u>COUNT II – APA: AGENCY ACTION THAT VIOLATES DUE PROCESS</u>**

91. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 86 as if fully set forth and restated herein.

92. SBA is an agency within the meaning of the APA. *See* 5 U.S.C. § 551.

93. The APA requires courts to "hold unlawful and set aside" agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

94. SBA's redetermination of TVC's RRF Program eligibility, deeming it ineligible for the RRF Program and demanding the return of its rightfully-awarded grant funds, through the Demand Letter, is final agency action.

95. TVC has a vested property interest in the RRF grant award it received in 2021 and spent in accordance with the RRF Statute.

96. SBA's redetermination of TVC's RRF Program award amount and demand that TVC return all of its RRF grant funds without proper notice to, or opportunity to be heard, by TVC.

97. SBA's redetermination of TVC's RRF Program award amount violates the Fifth Amendment to the U.S. Constitution by requiring the return to the U.S. Government of a vested property interest, namely TVC's RRF grant award, without providing it notice and an opportunity to be heard.

98. SBA has also violated TVC's due process rights by rubber-stamping its prior, incorrect recoupment decision without meaningfully engaging with any of TVC's objections to agency action, all of which demonstrate arbitrary and capricious agency action contrary to law.

99. SBA has also violated TVC's due process rights by providing a sham appeals process. Specifically, SBA informed TVC that it could submit the Treasury Appeal to SBA's Treasury Division (RRFWorkouts@sba.gov). However, the decision on TVC's Treasury Appeal came from the RRF Program Office (RRF_Change_of_Portal_User_Requests@sba.gov), *i.e.*, likely the same office that already made the original incorrect and unlawful reconsideration of TVC's eligibility, not an independent third party, thereby denying TVC any legitimate, fair, and

impartial review of its Treasury Appeal.

100. SBA has further violated TVC's due process rights by purporting to provide an opportunity for meaningful review by filing a Supplemental Request for Reconsideration after it issued a rote denial of TVC's Treasury Appeal. However, this process was a sham, having the same office deciding the Treasury Appeal decide the Supplemental Request for Reconsideration and returning a third rote denial. For the third time, SBA returned the decision to the same office that already made the original incorrect and unlawful reconsideration of TVC's eligibility, not an independent third party, thereby denying TVC any legitimate, fair, and impartial review of its Supplemental Request for Reconsideration.

101. Plaintiff has been harmed and will continue to be harmed by Defendants' actions.

102. Because SBA's redetermination decision is unconstitutional, the Court should hold it unlawful and set it aside under 5 U.S.C. §§ 702, 706(2)(B), and 28 U.S.C. § 2201(a).

**<u>COUNT III – APA: AGENCY ACTION CONSTITUTES AN ABUSE OF DISCRETION</u>**

103. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 86 hereof as if fully set forth and restated herein.

104. TVC meets the requirements for an RRF award, specifically that it is an eligible entity entitled to the amount it received as set forth by Congress's intent for the RRF Statute and as calculated by Square's POS system application, which Square developed alongside and with approval from SBA.

105. SBA correctly determined that TVC was an eligible entity and entitled to its award amount during its review of TVC's RRF application when it awarded TVC an RRF grant in 2021.

106. Nevertheless, on January 6, 2026, SBA changed its mind without warning or adequate explanation, claiming that TVC had to return the RRF award amount it had received five

years.

107. The final agency action in this case constitutes an abuse of discretion because, *inter alia*:

a. TVC's RRF award was a grant, not a loan, grants are not subject to repayment except in specific circumstances set by the grant documents, and the grant documents related to TVC's grant do not require repayment or permit recoupment under the circumstances of this matter, including but not limited to SBA's decision to reconsider its prior eligibility determination or award amount;

b. SBA's attempt to recoup TVC's RRF award denied TVC due process by failing to provide TVC with adequate notice and a hearing in a meaningful time and manner and by rubber-stamping its prior incorrect recoupment decision without meaningfully considering TVC's objections to agency action;

c. SBA's effort to recoup RRF awards exceeds the scope of SBA's Congressionally-delegated authority, specifically Congress did not provide SBA with the authority to recoup grants after the fact except in limited circumstances established by the RRF Statute and not applicable here;

d. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior award amount determination on TVC's RRF award, are untimely and come after the expiration of the record retention period for the grant, contrary to federal regulations, 2 C.F.R. §§ 200.334, .345(a)(1);

e. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior award amount determination on TVC's RRF award, are unreasonably delayed, issued almost five years after SBA made the original decision that TVC was eligible for its RRF award and amount and outside the limited reasonable amount of time within which SBA could reconsider its decisions (*i.e.*, weeks, not years);

f. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior award amount determination on TVC's RRF award, were issued more than three years after the one-year timeframe following the submission of TVC's final financial report in which SBA was required to make every effort to closeout the grant;

g. SBA's recoupment efforts violate the manifest injustice, estoppel, and detrimental reliance doctrines and fail to consider TVC's reliance interests, because TVC relied on SBA's representations and original decision making in approving TVC's RRF application by spending the grant funds in accordance with the RRF Statute, only to have SBA seek to recoup those funds years later;

h. SBA's Demand Letter, Delinquency Notice, and other explanations for recoupment are entirely conclusory, fail to articulate a satisfactory explanation for agency action, fail to consider all relevant factors, fail to provide a rational connection between the facts found and the choices made, and fail to explain, in detail, the basis for its changed policy or decision making with regard to TVC's grant;

i. SBA's reversal runs contrary to its initial guidance and public statements regarding its development of the RRF application alongside its POS partners;

j. SBA's reversal suggests it now takes issue with the application and methods it devised years ago alongside its POS partners;

k. SBA offers no explanation for this change in opinion;

l. It ignores clear and convincing undisputed evidence presented to the agency by TVC, including evidence that food and beverage service form the substantial part of TVC's business, and clear and convincing undisputed evidence that it utilized Square's application to calculate its grant amount;

m. The explanation for its redetermination of TVC's amount eligibility entirely fails to consider SBA's prior guidance, SBA's development of an application with POS partners, and SBA's own approval of such application; and

n. Otherwise was arbitrary and capricious based on the evidence in the Administrative Record, a copy of which has not been provided to TVC.

108. For each of these reasons, SBA's redetermination of TVC's RRF Program award amount to deem it ineligible to retain its award constitutes an abuse of discretion and must be set aside.

**COUNT IV – APA: CONTRARY TO LAW AND IN EXCESS OF STAUTORY JURISDICTION, AUTHORITY, OR LIMITATIONS**

109. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 86 hereof as if fully set forth and restated herein.

110. TVC meets the RRF Statute's definition of an eligible entity and satisfies the

Statute's general eligibility criteria for an RRF award.

111. TVC's eligibility was verified and specifically confirmed by SBA when it reviewed and approved TVC for a $532,399.37 RRF award.

112. The RRF Statute permits recovery of RRF funds only in narrow circumstances not present in this case.

113. Congress did not grant SBA the authority to redetermine an eligible entity's RRF grant award amount after issuance. Absent Congressional authorization, SBA's recoupment efforts predicated on a redetermination of eligibility are unlawful.

114. SBA is attempting to recoup TVC's RRF grant on the basis of its redetermination of TVC's award amount.

115. SBA's years-late award amount determination and collection efforts violate the RRF Statute and are contrary to law.

116. The final agency action in this case is also contrary to law because, *inter alia*:

a. TVC's RRF award was a grant, not a loan, grants are not subject to repayment except in specific circumstances set by the grant documents, and the grant documents related to TVC's grant do not require or permit repayment or permit recoupment under the circumstances of this matter, including but not limited to SBA's decision to reconsider its prior eligibility determination or award amount;

b. SBA's attempt to recoup TVC's RRF award denied TVC due process by failing to provide TVC with adequate notice and a hearing in a meaningful time and manner and by rubber-stamping its prior incorrect recoupment decision without meaningfully considering TVC's objections to agency

action;

c. SBA's effort to review eligibility determinations and recoup RRF awards exceeds the scope of SBA's Congressionally-delegated authority, specifically Congress did not provide SBA with the authority to reconsider eligibility determinations or recoup grants after the fact except in limited circumstances established by the RRF Statute and not applicable here;

d. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior award amount determination on TVC's RRF award, are untimely and come after the expiration of the record retention period for the grant, contrary to federal regulations, 2 C.F.R. §§ 200.334, .345(a)(1);

e. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior award amount determination on TVC's RRF award, are unreasonably delayed, issued almost five years after SBA made the original decision that TVC was eligible for its RRF award and amount and outside the limited reasonable amount of time within which SBA could reconsider its decisions (*i.e.*, weeks, not years);

f. SBA's Demand Letter and Delinquency Notice, and SBA's underlying reconsideration of its prior award amount determination on TVC's RRF award, were issued more than three years after the one-year timeframe following the submission of TVC's final financial report in which SBA was required to make every effort to close out the grant;

g. SBA's recoupment efforts violate the manifest injustice, estoppel, and

detrimental reliance doctrines and fail to consider TVC's reliance interests, because TVC relied on SBA's representations and original decision making in approving TVC's RRF application by spending the grant funds in accordance with the RRF Statute, only to have SBA seek to recoup those funds years later;

h. SBA's Demand Letter, Delinquency Notice, and other explanations for recoupment are entirely conclusory, fail to articulate a satisfactory explanation for agency action, fail to consider all relevant factors, fail to provide a rational connection between the facts found and the choices made, and fail to explain, in detail, the basis for its changed policy or decision making with regard to TVC's grant;

i. SBA's reversal runs contrary to its initial guidance and public statements regarding its development of the RRF application alongside its POS partners;

j. SBA's reversal suggests it now takes issue with the application and methods it devised years ago alongside its POS partners;

k. SBA offers no explanation for this change in opinion;

l. It ignores clear and convincing undisputed evidence presented to the agency by TVC, including evidence that food and beverage service form the substantial part of TVC's business, and clear and convincing undisputed evidence that it utilized Square's application to calculate its grant amount;

m. The explanation for its redetermination of TVC's amount eligibility entirely fails to consider SBA's prior guidance, SBA's development of an

application with POS partners, and SBA's own approval of such application; and

n. Otherwise was arbitrary and capricious based on the evidence in the Administrative Record, a copy of which has not been provided to TVC.

117. For each of these reasons, SBA's redetermination of TVC's RRF Program eligibility to deem it ineligible is contrary to law and must be set aside.

## COUNT V – APA: AGENCY ACTION UNSUPPORTED BY SUBSTANTIAL EVIDENCE

118. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 86 hereof as if fully set forth and restated herein.

119. SBA's reconsidered award amount determination is not supported by substantial evidence. TVC's application and documents submitted thereafter presented evidence that demonstrate TVC was eligible for its RRF award amount. Moreover, TVC relied upon calculations performed by the Square POS application, which was developed in partnership with SBA and approved by SBA before deployment.

120. Specifically, the agency ignored indisputable evidence conclusively demonstrating TVC's eligibility for an RRF award, including, *inter alia*:

a. TVC utilized its Square POS application to apply for its RRF award ;

b. SBA encouraged applicants to utilize their POS systems to apply for the RRF Program;

c. Square developed its application in partnership and with approval from SBA;

d. Square's POS system utilized data already available to it based on sales recorded within the application through transactions performed therein;

e. TVC relied upon Square's calculations knowing the application was developed in partnership with SBA and believing it would therefore accurately calculate its grant award amount;

f. TVC's RRF award was a grant, not a loan, grants are not subject to repayment except in specific circumstances set by the grant documents, and the grant documents related to TVC's grant do not require repayment or permit recoupment under the circumstances of this matter;

g. SBA's Demand Letter, Delinquency Notice, and other explanations for recoupment are entirely conclusory, fail to articulate a satisfactory explanation for agency action, fail to consider all relevant factors, fail to provide a rational connection between the facts found and the choices made, and fail to explain, in detail, the basis for its changed policy or decision making with regard to TVC's grant;

h. It ignores clear and convincing undisputed evidence presented to the agency by TVC, including evidence that food and beverage service form the substantial part of TVC's business, and clear and convincing undisputed evidence that it utilized Square's application to calculate its grant amount;

i. The explanation for its redetermination of TVC's amount eligibility entirely fails to consider SBA's prior guidance, SBA's development of an application with POS partners, and SBA's own approval of such application; and

j. Otherwise was arbitrary and capricious based on the evidence in the Administrative Record, a copy of which has not been provided to TVC.

121. Indeed, SBA's far-too-late reconsideration of TVC's award amount conflicts with the evidence of TVC's award amount eligibility that it presented to SBA in its application and which SBA deemed sufficient five years ago to award TVC an RRF grant.

122. SBA's ineligibility determination is accompanied by a short, conclusory statement that it was required to utilize amounts reported in its tax returns. SBA fails to consider or explain that its own developed process for applicants through POS partners did not require applicants to utilize their tax returns in reporting data. In fact, SBA encouraged applicants to rely upon their POS system data when filling out all RRF applications.

123. For each of these reasons, SBA's redetermination of TVC's RRF award amount to deem it ineligible is not supported by substantial evidence and must be set aside.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

a. Declare unlawful and set aside Defendants' ineligibility determination, Demand Letter, Delinquency Notice, Treasury Appeal Decision, and any other decision on which SBA seeks to recoup TVC's RRF award, as such decisions violated the Administrative Procedure Act;

b. Order SBA to produce a complete administrative record, including all documents relevant to, and on which the SBA official making the rescission determination based the decision to seek recoupment of, TVC's RRF award, including all recommendations by SBA officials, employees, and contractors for and against recoupment and SBA's review of TVC's Treasury Appeal;

c. On adequate motion, enter an order requiring SBA to engage in, and produce documents in response to, discovery to be issued in this action, because SBA's actions in attempting to recoup RRF awards five years later and without Congressional authority are made in bad faith and contrary to law;

d. On adequate motion, preliminarily and permanently enjoin Defendants from any and all efforts to recover TVC's RRF grant award;

e. On adequate motion, preliminarily and permanently enter an injunction requiring Defendants to close out TVC's RRF grant and cease any further action with respect to that grant;

f. Award TVC reasonable attorney's fees, costs, and other expenses incurred in this matter under any and all applicable statutes and/or regulations; and

g. Award any and all other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: October 25, 2026

/s/ Matthew E. Feinberg
Matthew E. Feinberg, Esq. (Bar No. 991638)
*mfeinberg@pilieromazza.com*
Scott W. Stemetzki, Esq. (*pro hac vice* forthcoming)
*sstemetzki@pilieromazza.com*
Kane T. Smith, Esq. (Bar No. 90007778)
*ksmith@pilieromazza.com*
**PILIEROMAZZA PLLC**
1001 G Street NW, Suite 1100
Washington, D.C. 20001
Ph: (202) 857-1000
Fx: (202) 857-0200

*Attorneys for Plaintiff Twin Valley Coffee LLC*